## BRUFF v. WATERBURY BUCKLE CO.[1]

*(Circuit Court, D. Connecticut.  November 26, 1886.)*

1. PATENTS FOR INVENTIONS—SUSPENDER BUCKLES.
   Letters patent No. 295,035, of March 11, 1884, to John W. Bruff, for an improvement in suspender buckles, construed, and its claims sustained.

2. SAME—CONSTRUCTION OF CLAIMS.
   The claims of this patent are limited to a suspender buckle having a spring clamp, and the first claim is limited to a buckle having a spring clamp divided at its center.

3. SAME—INFRINGEMENT—WHAT IS.
   Each of the claims of this patent being limited to a buckle having a spring clamp composed of two elastic wings or arms approaching each other, but not connected, they are not infringed by a buckle having its wings or arms firmly joined, and possessing no more resiliency than is due to the character of the material, although it performs all the functions of the patented buckle.

In Equity.
*M. D. Connolly*, for plaintiff.
*George E. Terry* and *M. B. Phillipp*, for defendant.

SHIPMAN, J.   This is a bill in equity which is founded upon the alleged infringement of letters patent No. 295,035, granted to John W. Bruff, March 11, 1884, for an improvement in suspender buckles. The invention is clearly stated in the following extract from the specification of the patent:

"This invention has relation to suspender buckles, and has for its object the provision of a buckle of novel construction, wherein the suspender cloth

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

or web will be held in place by the conjoint pressure of a spring-clamp and a flanged tongue, while remaining susceptible of ready adjustment, and the necessity of a toothed or serrated fastening, which has many disadvantages, entirely dispensed with. In suspender buckles, as commonly used, it is customary to employ an unyielding metallic frame, with a toothed or serrated tongue pivoted thereto, while various expedients serve as the means of attachment of the suspender straps, the buckle frame constituting the part to which the straps are attached. Where a toothed or serrated tongue is used, it is more or less objectionable, because it is not only troublesome to adjust and fasten, but is a source of injury and disfigurement to fine goods. In the employment of a plain-edged tongue, as the same has been applied, it has heretofore been found difficult to render the tongue effective as a fastening. This difficulty has been owing to the peculiar relation of the tongue to the other parts of the buckle, and the absence of any expedient to re-enforce the delicate pressure which the tongue obtains on the web. My improvement contemplates obviating these disadvantages, as well as many others, and hence it consists in the novel construction of the buckle frame and tongue, wherein the prominent features are—*First*, a buckle frame made of sheet metal, 'struck up' or bent into shape, and formed with a yielding spring-clamp to embrace, and with the tongue bind, the web or suspender cloth, and hold it firmly in place; *second*, a flanged plain-edged buckle tongue, constructed and adapted for the attachment of the suspender straps, and formed so as to rest in a slot in the back part of the buckle frame, and impinge upon and bind the suspender cloth or web between its flange and the spring-clamp of the frame."

The buckle frame is made by stamping or cutting the blank from a sheet of metal, and then by "striking up" or bending inwardly two wings, on opposite ends of the blank, until their edges are brought close together, and an elongated narrow space, in which the suspender cloth is inclosed, is left between the wings and the front part of the frame. These arms are elastic, and "produce a spring-clamp which will yield from inside pressure, but which exert a binding force or pressure against the web."

The claims are as follows:

"(1) A suspender buckle having a frame or bow formed with a spring-clamp, divided at its center, and integral therewith, and adapted to embrace and bind the web or suspender cloth, substantially as shown and described.

"(2) In a suspender buckle, the combination with a frame or bow having a spring-clamp to embrace the web or suspender cloth, and slotted to receive a tongue, of a buckle tongue, adapted for the attachment of the suspender-straps, and having a flanged edge or lip to impinge upon the web or cloth, and hold it against the clamp, substantially as described.

"(3) The buckle frame or bow consisting of the metallic plate, A, struck up or bent into shape, and having the inwardly turned leaves or wings, a, a, forming a clamp-spring or springs, and forming the elongated space, b, substantially as described. The combination of the buckle frame, consisting of the plate, A, provided with inwardly bent elastic clamp-arms, a, a, and having the slot, e, and the movable tongue, H, fitting and working in said slot, and formed with flange or lip, h, substantially as described."

Although a frame to receive the suspender cloth is old, the invention described in each claim is novel. The novelty consists in the impinging of the web by means of a smooth-edged buckle tongue, having its bearing in a slot in the front part of the buckle, against a spring-clamp, which is a part of, and not the main body of, the frame,

and which incloses the cloth. A spring-clamp is, perhaps, unnecessarily made a part of each claim. The patentee apparently thought that the resistance plate must necessarily be a yielding or "spring" plate. The defendant makes two forms of buckles which are complained of.

The decision in regard to infringement turns upon the question whether these buckles have a spring-clamp. "Buckle A" has a long arm or wing, bent inward, and under a short bent wing on the other side. The two wings form the elongated space in which the web is inclosed. Not being secured or fastened to each other, they make a spring-clamp which is not divided at its center; and therefore the first claim is not infringed, but the other three claims are infringed. The charge of infringement cannot be avoided, because the clamp is unequally divided, and although the long arm is bent under the short one, and makes a comparatively firm plate, I think that it can properly be considered a yielding or spring plate. "Buckle B" has two short wings, turned back, and securely locked to each other by a separate strip of metal extending across the width of the front part of the frame, and forming the back of the elongated space. I cannot see in this buckle a "spring-clamp" or elastic clamp-arms. It possesses only the spring or elasticity which naturally arises from the resiliency of brass, the material of which it is composed. The back of the buckle seems to be as strong, firm, and unyielding as the nature of the material will permit. It is true that the buckle performs all the functions of buckle A, or of the patented buckle, but it has not the spring-clamp which is a part of each claim.

Let there be a decree against making, selling, or using buckles like Exhibit A, and for an accounting.